## Case No. 14,695.

### UNITED STATES v. BURROUGHS.

[3 McLean, 405; [1] 2 West. Law J. 63, 119.]

Circuit Court. D. Ohio. July Term. 1844.

EMBEZZLEMENT FROM MAIL—INDICTMENT—OWNERSHIP OF STOLEN PROPERTY—VARIANCE—SURPLUSAGE—VERDICT.

1. A and B deposited certain bank notes with C and D, to be forwarded to the bank, with certain other notes on the same bank, owned by C and D; and the notes having been all stolen from the mail, may be laid in the indictment as the property of C and D.

[Cited in U. S. v. Jones, 31 Fed. 726.]

[Cited in brief in State v. Beatty, 90 Mo. 144, 2 S. W. 215.]

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

2. A slight and unsubstantial variance between the indictment and the proof, in regard to the direction of a letter which is not produced, and which the witness states, after the lapse of two years, with doubt, ought not to exclude the evidence.

3. And this is especially the case if, under some counts in the indictment, the objection of variance does not apply.

4. A carrier of the mail, for an offence under the law punishable generally, may be convicted, though not as carrier.

5. And being charged as carrier in the indictment, there being no such offence described, the word "carrier" will be considered as descriptive of his person and as surplusage.

6. One or more good counts in an indictment will sustain a general verdict of guilty, though there be one or more bad counts in it.

[Cited in U. S. v. Burns, Case No. 14,691; U. S. v. Patterson. Id. 16,011: U. S. v. Plumer, Id. 16,056.]

[W. M. Corry moved for a new trial upon the following grounds, which were also urged to the court and jury at the trial:

[The verdict, except on the second count, is unsustained by the evidence. The punishment for the offence mentioned in that count cannot exceed 6 months imprisonment, and a fine. The verdict on the first count cannot be sustained, for the 22d section of the postoffice act only provides for the case of stealing the mail from, and not by, the person having the custody of it; the words being "with or without the consent of the person having the custody thereof." It is unnecessary to consider whether the offence charged in this count could be the subject of an indictment in the state court, for the jurisdiction of this court is given only by the law of congress, which does not provide for the case of "stealing the mail" by the person having custody thereof, although the other clauses do provide for the case of the stealing &c. of a letter by such a person; and the indictment must rest therefore upon these latter clauses. See Pooley's Case (Old Bailey, 1801) 1 East. P. C., addenda, 17; Brown's Case, Russ. & R. 32, and the note of decisions on similar enactments: 3 Burn. J. P. 743; Rosc. 703. None of the other counts (except the 2d ut supra) is sustained by the proof, for they all charge that the property in the notes was in Semple & Barker, whereas after the notes were mixed together so that they could not be distinguished one from the other, Semple, Barker, Cooper and Kay, became tenants in common of the whole mass according to their respective proportions. Such is the effect in all cases where the property of different persons is rightly mixed together. Where it is wrongfully mixed, the wrong doer forfeits his share of the whole to the other owners. 1 Hale, P. C. 413; 2 Bl. Comm. 405; 2 Kent, Comm. 364; Inst. 2, 1, 26, 28; Com. Dig. Pl. (3 M.) 20: Story, Bailm. § 40; 21 Pick. 298, 304; 2 Johns. Ch. 108; 2 Blackf. 377; 2 Camp. 576; 1 Vern. 217; 2 Vern. 516; 2 Dane, Abr. 119; 19 Ves. 432; 7 Mass. 127; Bac. Abr.

"Trespass," E, 2. After Semple and Barker had mixed the notes together, and while they retained the possession of the whole, they had a special property in the whole, and could have maintained trover against any person taking them away. But when they had posted the letter containing all the notes, and had thus parted with the possession of the individual portion that had been committed to their charge, in pursuance of the bailment, they retained no right, either of property or possession in the individual share of Cooper and Hay. The only remaining interest of Semple and Barker, was the right of property in their own undivided share, whereas the indictment treats the sole property in a part of the notes to be in them. As their interest was one in common, and not sole, the indictment is not sustained by the evidence in this vital respect. Neither is the allegation, that the letter was directed to "M. Garraty, Esq., Cashier," made out by the evidence. The witness thought that the address did not contain the word "Cashier."

[Charles Anthony, U. S. Dist. Atty., argued that the carrier of a mail might be guilty of stealing it; that the 3d and subsequent counts were sustained by the evidence, as Semple and Barker had possession of the whole of the notes, and that the doctrine as to mixing property belonging to different owners, did not apply to a description of the ownership in an indictment. And that the omission to prove the superscription of the letter to be as stated in the indictment was immaterial, especially as the other counts were sustained.][2]

Jordan A. Pugh and W. M. Corry, for prisoner.

OPINION OF THE COURT. The jury having returned a verdict of guilty, on the seven counts contained in the indictment, a motion is now made for a new trial, and also in arrest of judgment:

On two grounds, the defendant's counsel insist that a new trial should be granted. 1. "Because the bank notes alleged to have been stolen, are stated, in all the counts of the indictment, to be the property of Semple and Barker, whereas the proof showed that they were the property of those persons and two other individuals." 2. "Because the proof was that the letter, which contained the notes, is averred in the indictment to have been directed to 'M. Garraty, Esquire, Cashier,' and the proof was, that it was directed to 'M. Garraty, Esquire.'"

It was proved that there were enclosed in the letter, bank notes on the Lancaster (Ohio) Bank, amounting to two hundred and six dollars; one hundred and ten dollars of which belonged to Semple and Barker, and the residue to James L. Cooper and C. H. Kay. That these latter individuals deposited

---

[2] [From 2 West. Law J. 63.]

their notes with Semple and Barker. to be forwarded to the bank to procure exchanges. All the notes were enclosed in the same letter, by Semple and Barker, which was signed by them. This is not a question between bailor and bailee; but the only inquiry is, whether there was such a property of all the notes in Semple and Barker, as sustains the allegation in the indictment. On this point there can be no doubt. They had possession of the notes for a special purpose, and were responsible for an improper use of them. The argument that they had parted with the possession of the notes, by enclosing them in a letter, by mail, requires no answer. A mere carrier may be described as the owner of the goods. 1 Hale, P. C. 512. Goods stolen from a washerwoman, may be described as hers, because she is answerable for them. 1 Leach, 357. If a coach be standing in the yard of a coach maker to be repaired, and a plate of glass and hammer cloth be stolen from it, the property may be well laid in the owner of the premises. Id. 356. "Where a parcel is stolen from the boot of a stage, the property may be laid in the driver, though he may be no proprietor of the goods or the coach; and though as against his employers he has a bare charge, but as against the rest of the world, he has a legal possession." Id.

The second ground, as regards the direction of the letter, affords no sufficient reason for setting aside the verdict. Barker, who directed the letter, says that his impression is, that it was directed to "M. Garraty. Esquire, Lancaster, Ohio," but he does not speak positively on the subject. He made no entry of the superscription, and as two years have elapsed, it is hardly to be expected that he should be able to state the fact positively. In Rosc. Ev. 199. "in an indictment upon 7 Geo. III., c. 50, the letter was described as one to be delivered to persons using, in trade, the name and firm of Messrs. B. N. & H.," the word. Messrs., being frequently added to their address. in the direction of letters and other papers received on business. though they themselves. in drawing bills, never used the word. "This was held to be no variance." If the letter had been presented, and the direction of it varied from the allegation in the indictment, it could not have been received in evidence. For, although the direction of the letter need not to have been stated in the indictment, yet having been stated. the proof must correspond with the allegation. But in this case the letter was not produced; the statement of the witness not being positive as to the variance, and the jury having found the defendant guilty generally. the verdict, it seems to us, should not be set aside. There is another view which is conclusive on this point. All the counts of the indictment, except three. are free from the objection of variance. The second count alleges that the letter was addressed to "M. Garraty, Esquire,

Lancaster, Ohio." The fifth count charges the defendant with embezzling a bag of letters, as carrier, which contained a bank note. And the sixth count contains the same charge, except a mail of letters is used instead of a bag of letters. The punishment on the two last counts, or either of them, is the same as on the three counts where the variance, if any, exists. So that, the finding of the defendant guilty on those counts does not, in the least, change the nature or amount of the punishment.

A motion for a new trial is addressed to the discretion of the court, and that discretion should never be exercised in favor of a defendant in a civil or criminal case, where substantial justice has been done, and where there is no principle of law which can operate favorably to the defendant. The letter, beyond dispute. was evidence under all the counts, except the third, fourth and seventh. The motion for a new trial is overruled. The motion in arrest of judgment is mainly founded upon the first count in the indictment. which charges the defendant with stealing the mail of the United States. In England, by the statute of 7 Geo. IV. c. 64, a material change has been made in the law, so that many exceptions to an indictment, which were before fatal on a motion in arrest, now must be taken advantage of by demurrer or writ of error. This, however, is not the law in this country. It is insisted that the carrier of the mail, if he take it fraudulently, is only guilty of a breach of trust; that such is the rule at common law, and that the act of congress does not make it an offence. In 1 Leach, 1, it is expressly laid down, that at common law, persons employed in the post-office, have no special property in the letters committed to their charge, which may prevent their stealing from amounting to larceny. If a bag of wheat be delivered to a warehouse man for safe custody, and he take the wheat out of the bag and dispose of it, it is larceny. Russ. & R., 337. Where a clerk embezzled a bill of exchange, which he had received in the usual course of business to be transmitted by post, it was held to be larceny. Case of Paradice, 2 East, P. C. 565; Case of Taylor [3 Bos. & P. 596]. The courts of the United States have no common law jurisdiction of offences, and the above citations are only made to show that the ground assumed as to the acts of the carrier, at common law, is not sustainable. It is admitted, that unless the charge in the first count is sustained under the twenty-second section of the post-office act of 1825 [4 Stat. 108], the count is bad. The words of the section are, "And if any person shall steal the mail, or shall steal or take from or out of any mail, or from or out of any post-office, any letter or packet; or if any person shall take the mail, or any letter or packet therefrom, or from any post-office, whether with or without the consent of the person having custody thereof, and

shall open, embezzle or destroy any such mail, letter or packet, the same containing any article of value, or any other article, paper or thing mentioned in the twenty-first section of this act; or if any person shall, by fraud or deception, obtain from any person having custody thereof, any mail, letter or packet containing any article of value, &c., such offender on conviction shall be imprisoned not less than two, nor exceeding ten years." - As the carrier of the mail, for any act of violence upon it, is punished with much greater severity than is provided in the above section, a presumption arises that the legislature did not consider the section as applying to a mail carrier. And this view is strengthened, by the provision that the offender shall be equally liable, "whether the mail, letter or packet, was obtained with or without the consent of the person having it in custody." Still, if the language of the section clearly embrace the offence charged, and it is punished nowhere else, the language of the section must govern, whatever may be supposed to have been within the mind of the legislature. It is very clear the defendant cannot be punished as carrier of the mail; but the question is, whether the word "carrier" may not be considered as descriptive of the person, and not as aggravating the offence. Because an individual is a carrier of the mail, it does not follow that he is exempt from punishment for offences disconnected with his employment. Suppose the carrier of the mail should steal a horse, and in the indictment for it he should be described as the carrier of the mail, would that vitiate the indictment? Surely not. As carrier he is not punishable for stealing a horse, but as an individual he is punishable. The description, as carrier, would be regarded as surplusage. And this rule applies to the case under consideration.

The defendant is charged, as carrier, with stealing the mail. Now, there is no such offence known to the law. But stealing the mail is an offence, and, it is supposed, that the defendant, to such a charge, could not plead in justification or excuse that he was a carrier of the mail. Suppose a carrier of the mail should steal a letter from a postoffice, and should be indicted for the taking of the letter as carrier, could he not be convicted? His description as carrier would be considered as used to identify him, and not as constituting an ingredient by which the penalty is to be measured. It is supposed that the count is defective, because the property of the mail is not laid to be in the United States, or in any one; nor is its value stated. This being a statutory offence, the value of the mail need not be stated, any more than the value of the letter. If a letter be stolen from a post-office, which contains an article of value, a higher punishment is inflicted on the offender, and consequently the article must be described and the value of it stated. But for the taking of a letter, which

contains nothing of value, no value need be averred; and so it is in regard to the mail. I confess that I am inclined to think, if a carrier of the mail, having possession of it, shall steal it, he cannot escape, for the reason that there is no provision in the statute to punish him as carrier. The act is punishable, and I see no reason why a carrier of the mail should escape. But it is unnecessary to overrule the motion in arrest, on this ground. The court do not decide the question. If the first count be bad, there being other counts in the indictment which are good, on a general verdict of guilty, the judgment cannot be arrested. In this, an indictment differs from a declaration. For one defective count in the latter, the judgment must be arrested; while in the former, one good count sustains the verdict. The motion in arrest of judgment was overruled; and the defendant was sentenced to ten years imprisonment in the penitentiary at hard labor.

UNITED STATES (BURROUGHS v.). See Case No. 2,202.